IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00794-CMA-MEH

BRYAN L. SIMS,
NANCEE SIMS,
NANCEE SIMS, as Legal Guardian of KEELYN SIMS (a handicapped individual),
NANCEE SIMS, as Custodial Parent for SHELBEE N.K. SIMS (a minor child),
KALEB K.D. SIMS,
SAMUEL G. BURRIS, and
VIRGINIA O. BURRIS,

    Plaintiffs,

v.

CATHY NEW, Case Manager, FCI Big Spring,
RON WILEY, Warden, FPC - Florence,
SHERRY JACOBSON, Unit Manager, FCI Big Spring,
PAULA TUBBS, Psychologist, FCI-Big Spring,
DAVID JUSTICE, former Warden, FCI-Big Spring,
QUINCY L. OLLISON, Chief Fraud Section, U.S. Attorneys' Office, S.D. Texas,
FIVE JOHN/JANE DOES, and
FEDERAL BUREAU OF PRISONS,

    Defendants.

## RECOMMENDATION ON MOTION TO DISMISS

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court is a Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed by Defendants Federal Bureau of Prisons, New, Wiley, Jacobson, and Tubb[1] [filed October 17, 2008; docket #55]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. LCivR 72.1.C, the Motion has been referred to this Court for recommendation. The Court finds that oral argument will not materially assist in resolving the Motion. The Court

---

[1] According to the record, service was attempted, but failed, upon Defendant Justice, a former employee of the Bureau of Prisons. Defendant Ollison recently waived service of process and will answer or otherwise respond to the Amended Complaint in accordance with federal and local rules.

recommends that, for the reasons stated herein, the Motion be **granted**.[2]

## BACKGROUND

Plaintiff Bryan Sims ("Bryan") is a prisoner in Colorado who initiated this *pro se* civil rights action on April 18, 2008. Before Defendants responded to the original Complaint, Plaintiff filed an Amended Complaint on August 4, 2008, which is the operative pleading in this matter. Docket #22. The Plaintiff amended his Complaint to include several members of his family as Plaintiffs and to add several defendants to the action. Essentially, the Amended Complaint alleges that Defendants used erroneous information in Plaintiff Bryan's central prison file to impose a Public Safety Factor (PSF) which kept Bryan at a higher security institution in Texas, rather than at a minimum security facility in Colorado closer to his family. Docket #22 at 3.[3] Plaintiffs contend that the imposition of the PSF (for abuse of telephone privileges), as well as the concomitant restrictions on his telephone use, have resulted in the denial of the family Plaintiffs' rights under the First Amendment and Plaintiff Bryan's rights under the Fifth Amendment and the Privacy Act. *Id.* Plaintiffs bring claims against Defendants for (1) conspiracy to deprive Plaintiff Bryan of his equal protection rights under the Fifth Amendment; (2) violations of the family Plaintiffs' First Amendment rights to visit

---

[2]Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

[3]Plaintiff Bryan was eventually transferred to the Federal Prison Camp in Florence, Colorado, in or about October 2007. *Id.*

2

and communicate with Plaintiff Bryan; and (3) violation of the Privacy Act, 5 U.S.C. § 552a(e)(15), for refusing to correct false information in Plaintiff Bryan's central file. *Id.* at 12-21.

Defendants filed the within Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) asserting that all of the Plaintiffs' claims are barred by the statute of limitations. Docket #55 at 1-2. In the alternative, Defendants contend that Claim One should be dismissed for failure to state a claim and failure to allege personal involvement of the Defendants, Claim Two should be dismissed for lack of standing, failure to state a claim and failure to allege personal involvement of the Defendants, and Claim Three should be dismissed for failure to state a claim. *Id.* at 2. Moreover, the Defendants claim they are entitled to qualified immunity for Claim One. *Id.*

Plaintiffs respond that, although their claims may have arisen prior to the applicable statute of limitations, such claims are subject to the "continuing violations" doctrine or should be equitably tolled as a result of "fraudulent concealment" and, thus, are properly before this Court. Moreover, the family Plaintiffs contend that they have standing to bring their First Amendment claims, since they have suffered injuries from the lack of visitations with Plaintiff Bryan. Finally, Plaintiffs assert that their Amended Complaint properly states viable constitutional claims. Defendants reply that the "continuing violations" doctrine does not apply to *Bivens* actions, and that Plaintiffs have failed to demonstrate standing (for purposes of Claim Two) and/or that the remaining claims are viable.

## DISCUSSION

### I. Standard of Review

#### A. Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are

3

courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims. Further, under a 12(b)(1) motion, "a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Stuart*, 271 F.3d at 1225.

  B. <u>Dismissal under Fed. R. Civ. P. 12(b)(6)</u>

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all of the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1968-69 (2007). Courts should look to the specific allegations of the complaint to determine whether they plausibly support a legal claim for relief-- that is -- a complaint must include "enough facts to state a claim for relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1236 (10th Cir. 2007); *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). The complaint must sufficiently allege facts supporting all of the elements necessary to establish an entitlement to relief under the legal theory proposed. *Lane v. Simon*, 2007 WL 2136579, *3 (10th Cir. July 26, 2007). As the Tenth

Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

      C.      Dismissal of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The court should not be the *pro se* litigant's advocate. *Hall*, 935 F.2d at 1110. A dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

**II.**    **Claims One and Two - First and Fifth Amendment claims**

      A.      Statute of Limitations

The Plaintiffs bring their constitutional claims in an action for damages pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Because a *Bivens* action for constitutional violations committed by federal agents is a judicially-created remedy, it does not carry its own statute of limitations. Where Congress has not enacted an express statute of limitations for a particular cause of action, federal courts generally borrow and apply the most closely analogous state statute of limitations, unless to do so would be inconsistent with federal law. *See Owens v. Okure,* 488 U.S. 235, 239 (1989). A *Bivens* action, like an action brought pursuant to 42 U.S.C. § 1983, is subject to the statute of limitations of the general personal injury

5

statute in the state where the action arose. *Industrial Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994) (citing *Wilson v. Garcia,* 471 U.S. 261 (1985) (§1983 actions are subject to statute of limitation provided for general personal injury actions in state where action arose)). The applicable statute of limitations in Colorado is two years. *Id.*; *see also* Colo. Rev. Stat. § 13-80-102.

Federal law, not state law, controls the issue of when a federal cause of action accrues. *Industrial Constructors Corp.*, 15 F.3d at 968; *see also Baker v. Board of Regents of the State of Kansas,* 991 F.2d 628, 632 (10th Cir. 1993); *Newcomb v. Ingle,* 827 F.2d 675, 678 (10th Cir. 1987). The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action. *United States v. Kubrick,* 444 U.S. 111, 121, 100 S.Ct. 352, 359, 62 L.Ed.2d 259 (1979); *Baker,* 991 F.2d at 632; *Bradley v. United States*, 951 F.2d 268, 270 (10th Cir. 1991); *Ohio v. Peterson, Lowry, Rall, Barber & Ross,* 651 F.2d 687, 692 (10th Cir.), *cert. denied,* 454 U.S. 895 (1981). A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. *Peterson,* 651 F.2d at 692.

This action was initiated on April 18, 2008; therefore, the Plaintiffs' claims must have accrued no earlier than April 18, 2006. Here, the Plaintiffs contend that the imposition of the Public Safety Factor (PSF) regarding "serious telephone abuse" resulted in Defendants' refusal to transfer Plaintiff Bryan to a minimum security facility closer to his family and in Defendants' restrictions on Plaintiff Bryan's telephone use and mail. According to the Amended Complaint, Plaintiff was informed at a team meeting in April 2002 that the PSF had been imposed upon him. *See* Amended Complaint, docket #22, at ¶23. Apparently, the PSF was supported by a February 13, 2002 letter from Defendant Ollison asserting that the "fraudulent investment scheme" to which Bryan had

6

pleaded guilty of conspiracy, "involved extensive use of the telephone to solicit investors into the scheme." *Id.* at ¶ 21. Bryan contends that such information is untrue and that, after repeated requests, he finally received a copy of the letter in December 2005. *Id.* at ¶ 23. Immediately thereafter, Bryan requested that the letter be deleted from his file as "completely erroneous." *Id.* at ¶ 24.

Considering the allegations of the Amended Complaint, the Court finds that Plaintiffs' claims regarding the imposition of the PSF began to accrue in April 2002 when Bryan was informed of the PSF and the reason for its imposition. While Bryan may not have received a copy of Ollison's letter supporting the PSF until December 2005, Bryan knew of its existence and complained that the PSF was erroneous before he received the letter.

Plaintiffs contend that, by refusing to provide Bryan with a copy of Ollison's letter, Defendants fraudulently concealed the facts underlying Plaintiffs' claims. Fraudulent concealment by defendants will in some instances toll the statute of limitations; however, to prove that the statute of limitations was tolled by a defendant's fraudulent concealment, a plaintiff must show that his ignorance of his cause of action was not the result of his lack of diligence, but was due to affirmative acts or active deception by the Defendant to conceal the facts giving rise to the claim. *Industrial Constructors Corp.*, 15 F.3d at 968 (citing *Baker,* 991 F.2d at 633 n. 4). A plaintiff need not know the full extent of his injuries before the statute of limitations begins to run. *See Gustavson v. United States,* 655 F.2d 1034, 1036 (10th Cir. 1981); *Robbins v. United States,* 624 F.2d 971, 973 (10th Cir. 1980).

Here, the Court finds that the statute of limitations was not tolled by fraudulent concealment since Plaintiff Bryan knew the facts giving rise to his claims before he received a copy of the letter. However, even if Bryan did not have the necessary information until December 2005, any claims

7

regarding the imposition of the PSF are still barred by the two-year statute of limitations in this case.

Plaintiffs assert that their claims are not barred because the Defendants have engaged in continuing violations of the Plaintiffs' constitutional rights. Defendants counter that the "continuing violations" doctrine does not apply to *Bivens* actions. The continuing violation doctrine, if it applied, "would permit a plaintiff to challenge incidents that occurred outside of the statute of limitations if the incidents 'are sufficiently related and thereby constitute a continuing pattern' of wrongful conduct." *Fogle v. Pierson,* No. 05-cv-01211-MSK-CBS, 2008 WL 821803, at *5 (D. Colo. Mar. 26, 2008) (unpublished opinion) (quoting *Hunt v. Bennett,* 17 F.3d 1263, 1266 (10th Cir. 1994)). However, the doctrine would not allow a plaintiff to challenge discrete acts of wrongful conduct which occurred outside of the statute of limitations. *Id.* The doctrine, which is employed in Title VII litigation, has never been definitively applied in this context. Indeed, courts in this district have recognized that the "Tenth Circuit has not determined whether the continuing violation doctrine should be applied to complaints filed under 42 U.S.C. § 1983" and *Bivens. Id.* at *4.

Even if the doctrine were applied to this case, however, Plaintiff Bryan cannot avoid the consequences of the limitations period by alleging a continuing conspiracy in this case. "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *National Advertising Co. v. City of Raleigh,* 947 F.2d 1158, 1166 (4th Cir. 1991) (quoting *Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir. 1981)). Bryan challenges discrete actions that occurred on specific dates (i.e. February 13, 2002 letter; the April 2002 team meeting; a 2005 meeting among Defendants New, Jacobson and Tubbs, etc.). "A 'continuing wrong' theory should not provide a means of relieving plaintiff from [his] duty of reasonable diligence in pursuing [his] claims." *National Advertising Co.,* 947 F.2d at 1168 (quoting *Ocean Acres Ltd. v. Dare County Board of Health,* 707 F.2d 103).

> Injury and damage in a civil conspiracy action flow from the overt acts, not from 'the mere continuance of a conspiracy.' ... Consequently, the cause of action runs separately from each overt act that is alleged to cause damage to the plaintiff, ... and '[s]eparate conspiracies may not be characterized as a single grand conspiracy for procedural advantage.' ... Accordingly, plaintiffs may recover only for the overt acts ... that they specifically alleged to have occurred within the ... limitations period.

*Scherer v. Balkema,* 840 F.2d 437, 439 (7th Cir.) (internal citations omitted), *cert. denied,* 486 U.S. 1043 (1988). This rule of law was endorsed in *Merrigan v. Affiliated Bankshares of Colorado, Inc.,* 775 F. Supp. 1408, 1412 (D. Colo.1991) ("where there is an alleged conspiracy, the statute of limitations runs from each act of conspiracy"). Here, Plaintiff Bryan may not recover from any alleged conspiratorial actions that occurred prior to April 18, 2006.

According to the Plaintiffs, their claims arise from the imposition of a PSF that kept Plaintiff Bryan from transferring to a facility closer to his family, and the ill effects thereto. Thus, to the extent that Plaintiff Bryan alleges acts of conspiracy, equal protection violations, or violations of the Privacy Act that occurred prior to April 18, 2006, and to the extent that the family Plaintiffs allege First Amendment violations that occurred prior to August 4, 2006 (two years prior to the filing of their claims in the Amended Complaint), the Court recommends that such claims be dismissed.

B.   Remaining Claims

With respect to Claims One and Two, the individual Defendants assert that they are entitled to qualified immunity. According to the Amended Complaint, the allegations that appear to remain outside of those barred by the statute of limitations are the Defendants' alleged refusals in 2006 and Spring 2007 to waive Bryan's PSF so that he might be transferred to a minimum security facility [docket #22 at ¶ 33], and the Defendants' alleged restrictions on the Plaintiffs' telephone use and mail both at FCI-Big Spring and at the FPC-Florence [*id.* at ¶¶ 56-62].

Qualified immunity protects government officials performing discretionary functions from individual liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

> In evaluating a claim for qualified immunity, the court must first determine whether, considered in the light most favorable to the plaintiff, the facts alleged state the violation of a [statutory or] constitutional right. . . . If so, the court must go on to determine whether the [statutory or] constitutional right was clearly established at the time of injury. . . . If the answer to either of these questions is no, the defendant is entitled to qualified immunity.

*PETA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1207 (10th Cir. 2002) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). Thus, the Court must determine first whether Plaintiffs have stated violations of statutory or constitutional rights.

1. Refusals to Waive PSF

In bringing his claim for damages due to Defendants' refusals to waive the Public Safety Factor, Plaintiff Bryan must allege a violation of a constitutional right. Here, construing the pleading liberally, Bryan claims that he suffered discrimination in violation of the Fifth Amendment's equal protection clause by the Defendants' refusals to waive the PSF and allow him to transfer to a minimum security facility. Docket #22 at ¶ 39.

The Equal Protection Clause directs that the government treat similarly situated individuals the same absent a rational basis for disparate treatment. *See Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n,* 483 F.3d 1025, 1031 (10th Cir. 2007). Because Bryan "does not claim that the defendants treated him differently because of any suspect classification," however, he "must prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." *Templeman v. Gunter,* 16 F.3d 367, 371 (10th Cir. 1994); *see also Helm v. Colorado,* 244 Fed. Appx. 856, 859 (10th Cir. 2007) (unpublished). Bryan's equal

protection claim here fails because he has not identified any inmate, similarly situated to Bryan, for whom Defendants have waived PSFs or transferred to lesser security facilities. *See Keck v. Zenon,* 240 Fed. Appx. 815, 819-20 (10th Cir. 2007) (unpublished) (affirming dismissal of equal protection claim for failure to identify similarly situated inmates); *see also Abbott v. McCotter,* 13 F.3d 1439, 1441 (10th Cir.1994) (upholding dismissal of conclusory equal protection claim for frivolousness). Therefore, because Plaintiff Bryan fails to state a viable Equal Protection claim,[4] the Court recommends finding that individual Defendants enjoy qualified immunity from the allegations raised in Claim One and that the claim be dismissed.

2. Telephone and Mail Restrictions

The family Plaintiffs allege that the restrictions placed upon Plaintiff Bryan's telephone use and mail have resulted in violations of their First Amendment rights. The First Amendment protects rights to familial association. *Wirsching v. Colorado*, 360 F.3d 1191, 1198 (10th Cir. 2004). The Supreme Court has held that "parents have a liberty interest, protected by the Constitution, in having a reasonable opportunity to develop close relations with their children." *Id.* (quoting *Hodgson v. Minnesota,* 497 U.S. 417, 483 (1990)). In the prison context, courts and commentators have observed that visitation may significantly benefit both the prisoner and his family. *See Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 465-70 (1989) (Marshall, J., dissenting); *see also Thornburgh v. Abbott,* 490 U.S. 401, 407 (1989) (stating that "[a]ccess [to prisons] is essential ... to families and friends of prisoners who seek to sustain relationships with them").

Nevertheless, "[t]he very object of imprisonment is confinement," and "[m]any of the

---

[4]Although the claim actually alleges a "conspiracy" to violate the Fifth Amendment, the Plaintiff alleges no conspiratorial acts within the statute of limitations regarding the imposition or waiver of the PSF.

liberties and privileges enjoyed by other citizens must be surrendered by the prisoner." *Wirsching*, 360 F.3d at 1198 (quoting *Overton v. Bazzetta,* 539 U.S. 126, 123 S.Ct. 2162, 2167 (2003)). Prisoners do not retain rights inconsistent with proper incarceration, and "freedom of association is among the rights least compatible with incarceration." *Id.* Accordingly, the Constitution allows prison officials to impose reasonable restrictions upon visitation. *See id.*

Here, unlike the plaintiff in *Wirsching*, the family Plaintiffs are not completely restricted from visitation with Plaintiff Bryan. In fact, Defendants contend that the family Plaintiffs lack standing to assert violations of the First Amendment, since they have suffered no actual injury in that they have been able to visit Bryan and write him letters. The Court agrees. The Plaintiffs' primary concerns involve the *difficulty* in visiting Bryan - i.e. the arduous process in preparing for in-person visits, the lack of telephone calls, and the protracted length of time in mail delivery - but, the Court finds that such difficulties are incidental to prison life and do not comprise unreasonable restrictions on visitation. The family Plaintiffs are not, and have not been, precluded from visiting Bryan in person, nor from writing him letters.

In fact, the Amended Complaint reflects that, although Defendant Wiley allegedly restricted Plaintiff Bryan's telephone use upon his arrival at the FPC-Florence,[5] the family Plaintiffs were able to communicate with Bryan by telephone during his grandchild's surgery; the complaint appears to arise from the requirement that Bryan pay for such calls. The Plaintiffs do not allege that Bryan was the only inmate required to pay for personal telephone calls. Moreover, Bryan asserts that, since his

---

[5]The Plaintiffs allege in the Nature of the Case portion of the Amended Complaint that, in restricting Bryan's telephone use, Defendant Wiley "joined the conspiracy for a continual constitutional tort." Docket #22 at ¶ 34. However, Wiley's actions were alleged only as violations of the First Amendment, as set forth in Claim Two, and were not alleged as violations of the Fifth Amendment, as set forth in Claim One.

transfer to the FPC in Florence, he has been placed on mail monitoring, which results in delays of one, two or several days. However, the family Plaintiffs allege no injury as a result of such delays. Because the family Plaintiffs fail to assert a viable constitutional right, the Court recommends finding that the individual Defendants enjoy qualified immunity from the allegations raised in Claim Two and that the claim be dismissed.

### III. Claim Three - Privacy Act

In Claim Three of his Amended Complaint, Plaintiff Bryan alleges that Defendant Bureau of Prisons refused to correct false and erroneous information in his central file (Ollison's letter supporting the PSF) in violation of the Privacy Act, 5 U.S.C. § 552a(e)(5).[6] Docket #22 at ¶ 65. The Privacy Act requires that, whenever a federal agency

> fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights or opportunities of, or benefits to the individual that may be made on the basis of such records, and consequently a determination is made which is adverse to the individual . . . the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

5 U.S.C. § 552a(g)(1)(C). An action arising under the Privacy Act may be brought "within two years from the date on which the cause of action arises." 5 U.S.C. § 552a(g)(5). A Privacy Act cause of action arises when (1) an error is made in maintaining the plaintiff's records, (2) the plaintiff was wronged by such error, and (3) the plaintiff either knew or had reason to know of the error. *Harrell v. Fleming*, 285 F.3d 1292, 1293 (10th Cir. 2002) (citing *Bergman v. United States,* 751 F.2d 314, 316 (10th Cir. 1984)). A new cause of action does not arise upon each and every subsequent adverse determination based on erroneous records. *Id.*

---

[6]The Amended Complaint actually cites 5 U.S.C. § 552a(e)(15); however, no such subsection exists, and subsection (5) is cited later in Claim Three.

Bryan contends that he "fought for more than three and one-half years to even be able to see the letter from Ollison," which he knew was used to support the imposition of the PSF against him. *See* Docket #22 at ¶ 67. Bryan further states that after he finally received a copy of the letter on December 5, 2005, he immediately requested, through the administrative process, to have the letter deleted or corrected in his central file. *Id.* Bryan claims that his administrative remedies were finalized on June 8, 2006 and thus, that he has filed the instant action within the two-year statute of limitations set forth in the Privacy Act. *Id.*

The Court finds that Bryan's cause of action accrued when he learned about the letter and its adverse effect on him in or about April 2002. However, even if the Court were to find that Bryan's cause of action accrued at the time he received a copy of the letter in December 2005, his action is still barred by the Privacy Act's statute of limitations. The filing of Plaintiff's administrative claim is irrelevant to the Privacy Act limitations period, which applies to filing in federal court. *See Christensen v. United States Dep't of Interior*, 109 Fed. Appx. 373, *2 (10th Cir. Sept. 22, 2004) (unpublished) (citing 5 U.S.C. § 552a(g)(5) ("[a]n action to enforce any liability created under this section may be brought *in the district court of the United States* ... within two years from the date on which the cause of action arises ....") (emphasis added)). Furthermore, there is no basis for tolling the limitations period while Bryan pursued his administrative claim, because there is no administrative exhaustion requirement when a plaintiff seeks damages for a violation of § 552a(g)(1)(C) of the Privacy Act. *Id.*; *see also Quinn v. Stone,* 978 F.2d 126, 137 & n. 22 (3d Cir. 1992) ("there is no exhaustion requirement in a suit for damages under § 552a(g)(4)"); *Diederich v. Department of Army,* 878 F.2d 646, 647-48 (2d Cir. 1989) (same); *Nagel v. United States Dep't of Health, Educ. & Welfare*, 725 F.2d 1438, 1441 n.2 (D.C. Cir. 1984) (same). Thus, there was no impediment to Bryan's raising his Privacy Act claim in federal court while his administrative claim

was pending.

Therefore, the Court recommends that the District Court find Plaintiff Bryan's Privacy Act claim barred by the statute of limitations and dismiss Claim Three.

## **CONCLUSION**

Based upon the foregoing, this Court respectfully RECOMMENDS that the Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed by Defendants Federal Bureau of Prisons, New, Wiley, Jacobson, and Tubb [filed October 17, 2008; docket #55] be **granted** and that the claims against Defendants be dismissed.

DATED this 14th day of January, 2009, in Denver, Colorado.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge