**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 08-cv-00794-CMA-MEH

BRYAN L. SIMS,
NANCEE SIMS,
NANCEE SIMS, as Legal Guardian of KEELYN SIMS (a handicapped individual),
NANCEE SIMS, as Custodial Parent for SHELBEE N.K.SIMS (a minor child),
KALEB K.D. SIMS,
SAMUEL G. BURRIS, and
VIRGINIA O. BURRIS,

      Plaintiffs,

v.

CATHY NEW, Case Manager, FCI Big Spring,
RON WILEY, Warden, FPC - Florence,
SHERRY JACOBSON, Unit Manager, FCI Big Spring,
PAULA TUBBS, Psychologist, FCI Big Spring,
DAVID JUSTICE, former Warden, FCI Big Spring,
QUINCY L. OLLISON, Chief Fraud Section, U.S. Attorneys' Office, S.D. Texas,
FIVE JOHN/JANE DOES, and
FEDERAL BUREAU OF PRISONS,

      Defendants.

_____

**ORDER ADOPTING AND AFFIRMING JANUARY 14, 2009 AND
MARCH 17, 2009 RECOMMENDATIONS OF UNITED STATES
MAGISTRATE JUDGE**

_____

This matter is before the Court on Plaintiffs' Objections to the Magistrate Judge's

Recommendations that Defendants' Motions to Dismiss be granted (Docs. # 83 & 97)

and that Plaintiff's Motion to Amend to Add Parties be denied.  (Doc # 84.)  For the

following reasons, the Recommendations are AFFIRMED AND ADOPTED.

Defendants Bureau of Prisons ("BOP"), New, Wiley, Jacobson, and Tubb[1] (collectively, the "BOP Defendants") filed a Motion to Dismiss on October 17, 2008. (Doc. # 55.)  On January 14, 2009, the Magistrate Judge issued a recommendation in which he recommends that the BOP Defendants' Motion to Dismiss be granted (Doc. # 83.)  Plaintiff filed a timely objections to the Magistrate Judge's Recommendation on February 3, 2009.  (Doc. # 90.)

On February 6, 2009, Defendant Ollison filed a Motion to Dismiss based on nearly identical arguments to those made by BOP Defendants.  (Doc. # 91.)  The Magistrate Judge also recommends that Defendant Ollison's Motion to Dismiss be granted.  (Doc. # 97.)  Plaintiffs have not filed any objections to the Magistrate Judge's Recommendation on Defendant Ollison's Motion.  However, the grounds for the Magistrate Judge's recommendation on Defendant Ollison's Motion are identical to the grounds for the recommendation on BOP Defendants' Motion.  Thus, the Court will give Plaintiffs the benefit of the doubt and apply their objections to the Recommendation on BOP Defendants' Motion to the Recommendation on Defendant Ollison's Motion, too.

Plaintiff has tried, but has not served Defendant Justice.  Thus, Defendant Justice has not entered an appearance.

---

[1]  Plaintiffs mis-name Defendant V. Anne Tubb as Paula Tubbs in the Amended Complaint.

## **FACTUAL BACKGROUND**

This is a *pro se* prisoner lawsuit.  Plaintiffs' claims stem from an alleged conspiracy among Defendants aimed at precluding Defendant BOP from transferring Plaintiff Bryan Sims ("Plaintiff Bryan") from a higher security prison institution in Texas to a lower security institution closer to his family in Colorado.  The Court derives the following facts from Plaintiffs' Amended Complaint.

The central tenet of Plaintiffs' claims is a February 13, 2002 letter purportedly written by Defendant Ollison (the "Ollison Letter").  Plaintiffs allege that the Ollison Letter contained false information regarding Plaintiff Bryan's criminal charges and history which lead BOP Defendants to impose a "Public Safety Factor" ("PSF") and telephone restrictions on Plaintiff Bryan.  Plaintiffs allege that Defendant New requested Defendant Ollison to write the letter because of a personal vendetta that Defendant New had against Plaintiff Bryan and that no legitimate reason existed for the letter or the resulting PSF or telephone restrictions.

Plaintiff Bryan first learned of the Ollison Letter at an April 2002 meeting with BOP officials, including Defendant New.  He alleges that Defendant New informed him that the Ollison Letter was the basis for his PSF at that meeting.  Plaintiff Bryan "immediately" recognized the Ollison Letter contained false information and requested a copy.  However, despite his requests, he did not receive a copy of the Ollison Letter until December 2005.

Plaintiffs allege that as a result of the PSF, Plaintiff Bryan remained incarcerated in Texas, rather than close to his family in Colorado, for much longer than he should have under BOP regulations.  Plaintiffs allege that the failure to transfer him caused severe hardship on Plaintiff Bryan and his family.  Even after Defendant BOP transferred Plaintiff Bryan to a lower security institution in Colorado in 2007, Plaintiffs allege that Defendant Wiley declined to remove the PSF from Plaintiff Bryan's file. Plaintiffs allege that Defendant Wiley furthered the conspiracy to deprive Plaintiffs of their constitutional rights by placing severe telephone restrictions on Plaintiff Bryan.

### STANDARD OF REVIEW

When a party files timely objections to a magistrate judge's recommendation, the Court should conduct a *de novo* review of the issues raised by the party's objections. *See* Fed. R. Civ. P. 72(b)(3).  Regarding those matters for which a party does not raise an objection, the Court will apply the clear error standard of review.  *See Grady v. Edmonds*, 2009 WL 524998, *1 (D. Colo. Mar. 2, 2009) (Ebel, J.); *see also Summers v. Utah*, 927 F.2d 1165, 1167-68 (10th Cir. 1991) (noting that a district court may review an unchallenged magistrate judge's report under any standard the court deems appropriate) (citing *Thomas v. Arn*, 474 U.S. 140, 150, 154 (1985)).

Based on its review, the Court concludes that the Magistrate Judge's thorough and comprehensive analyses and recommendations are correct.

## ANALYSIS

Plaintiffs allege three claims for relief.  In their first claim, Plaintiffs allege that Defendants conspired to deprive Plaintiff Bryan of his equal protection rights under the Fifth Amendment.  In their second claim, Plaintiffs allege that Defendants' placed restrictions on Plaintiff Bryan that denied his family members their First Amendment rights to familial association.  Plaintiffs' third claim alleges a violation of the Privacy Act, 5 U.S.C. § 552a(e)(15), for Defendants' failure to correct allegedly false information contained in Plaintiff Bryan's central prison file.

Both BOP Defendants and Defendant Ollison moved to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. The Magistrate Judge recommended that Plaintiffs' claims be dismissed because they are time-barred by the applicable statutes of limitations.  The Magistrate Judge also recommended that, to the extent Plaintiffs' first and second claims relied on timely actions by Defendants, the claims should nevertheless be dismissed because Defendants are entitled to qualified immunity.

Plaintiffs raise a number of objections to the Magistrate Judge's recommendations.  Although Plaintiffs' objections are not separate or succinct, the Court will attempt to address each of them below.

## I.    STATUTE OF LIMITATIONS

The Magistrate Judge recommended that, to the extent Plaintiffs' first and third claims relied on actions that occurred prior to April 18, 2006, those claims should be

5

dismissed because they are time-barred by the two-year statutes of limitations applicable to *Bivens* and Privacy Act claims.  The Magistrate Judge also recommended that, to the extent Plaintiffs' second claim relied on actions occurring prior to August 4, 2006, the claims should be dismissed as time-barred.

      A.    <u>Applicable Law – Statute Of Limitations Issues</u>

All three claims for relief are governed by a two-year statute of limitations.

      1.    *Bivens* Claims

Claims one and two sound under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  As a judicially-created remedy, *Bivens* claims do not have an applicable federal statute of limitations.  Thus, for statute of limitations purposes, courts typically analogize a *Bivens* claim to a claim under § 1983. In the Tenth Circuit, the personal injury statute of limitations for the state where the action arose provides the applicable limitations period for § 1983 claims, *Industrial Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994), and, therefore, for a *Bivens* claim, as well.  In Colorado, that statute of limitations is two years.  *See* C.R.S. § 13-80-102.

Federal law controls the accrual date in a federal civil rights lawsuit like this one. *See Industrial Constructors*, 15 F.3d at 968; *Newcomb v. Ingle*, 827 F.2d 675, 678 (10th Cir. 1987).  "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) (quoting *Baker v. Board of Regents*, 991 F.2d 628, 632 (10th Cir.

1993)); *see also Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (cause of action

"accrues when facts that would support a cause of action are or should be apparent").

The accrual date of Plaintiffs' claims may be tolled by either statute or equity.

Although federal law controls the accrual date, state law controls the tolling of a statute

of limitations. *See Hardin v. Straub*, 490 U.S. 536, 539 (1998) (stating that "[l]imitations

periods in § 1983 suits are to be determined by reference to the appropriate state

statute of limitations and the coordinate tolling rules") (quotations omitted); *accord Fogle*

*v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006).  Under Colorado law, equitable tolling

may suspend the running of the limitations period "when flexibility is required to

accomplish the goals of justice." *Morrison v. Goff*, 91 P.3d 1050, 1053 (Colo. 2004)

(quoting *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096 (Colo. 1996)).

The Colorado Supreme Court has applied equitable tolling in situations when a plaintiff

could not timely file his lawsuit because of "extraordinary circumstances" or because the

defendants' wrongful conduct prevented the plaintiff from filing a timely lawsuit.

*See Morrison*, 91 P.3d at 1053.

2.    The Privacy Act

Under 5 U.S.C. § 552a(g)(5), a claim arising under the Privacy Act must be

brought within two years of the date on which the cause of action arises.  5 U.S.C.

§ 552a(g)(5).  A cause of action under the Privacy Act arises when three elements

occur.  Those three elements are:  (1) an error is made in maintaining the plaintiff's

records; (2) the plaintiff was wronged by the error; and (3) the plaintiff knew or had

7

reason to know of the error.  *See Harrell v. Fleming*, 285 F.3d 1292, 1293 (10th Cir. 2002).  Notably, "[a] new cause of action does not arise 'upon each and every subsequent adverse determination based on erroneous records,' otherwise, 'the two-year statute would never run.'" *Id.* (quoting *Bergman v. United States*, 751 F.2d 314, 316 (10th Cir. 1984).

B.    The Magistrate Judge's Recommendations

The Magistrate Judge concluded that Colorado's two-year, personal injury statute of limitations should apply to the *Bivens* claims in this case.  He also applied the two-year statute of limitations in the Privacy Act to Plaintiffs' Privacy Act claim.  Then, based on the allegations in Plaintiffs' Amended Complaint, the Magistrate Judge found that Plaintiffs knew or should have known of their alleged injuries after Plaintiff Bryan learned about the Ollison Letter at an April 2002 meeting involving Plaintiff Bryan and some of the BOP Defendants.  Thus, the Magistrate Judge concluded that all three claims accrued in 2002.  The Magistrate Judge further found unavailing Plaintiffs' arguments for tolling and application of the continuing violation doctrine.

Since Plaintiffs' did not file this lawsuit until April 18, 2008, the Magistrate Judge concluded that Plaintiffs' claims fell outside of the statute of limitations and he recommended that this Court dismiss the claims for failure to state a claim and lack of subject matter jurisdiction.

C.      Plaintiffs' Objections Regarding the Statutes of Limitations

Plaintiffs raise a number of objections to the Magistrate Judge's analysis of the statutes of limitations.

1.      Plaintiffs' Claims Accrued In April 2002

Plaintiffs contend that the Magistrate Judge erred in concluding that Plaintiffs' claims accrued in April 2002.

The Magistrate Judge concluded that Plaintiffs knew or should have known that the Ollison Letter caused their injuries when Plaintiff Bryan discovered the existence of the letter at the April 2002 meeting.  Plaintiffs object and argue that Plaintiff Bryan did not receive a copy of the letter in December 2005.  Plaintiffs further contend that their claims could not accrue until Plaintiff Bryan knew of the Ollison Letter's exact contents in December 2005.

However, Plaintiffs' own allegations, specifically paragraphs 23 and 24 of the Amended Complaint, contradict their objection.  Paragraph 23 alleges that Defendant New told Plaintiff Bryan in April 2002 that the PSF was based on the Ollison Letter.  Thus, Plaintiff Bryan knew that he faced restrictions and that he would not be transferred because of the Ollison Letter.  Paragraph 24 then alleges that, "BRYAN immediately filed a written request that the letter be deleted from his file *as it was completely erroneous.*"  (Doc. # 22, ¶ 24 (emphasis added, capitalization in original).)  In other words, Paragraphs 23 and 24 establish that Plaintiffs knew about the alleged injuries (imposition of the PSF) and "immediately" knew the cause of alleged injuries

(the Ollison Letter) in April 2002.  Therefore, the Court agrees with the Magistrate Judge that Plaintiffs' claims accrued and the statute of limitations began to run at that time. *See Smith*, 149 F.3d at 1154.

> 2.     Tolling Does Not Apply

Plaintiffs argue that Defendants concealed the Ollison Letter and, therefore, that the Magistrate Judge should have tolled the statute of limitations.  However, allegations of fraudulent concealment by Defendants do not support tolling under the circumstances of this case.

Even if Defendants concealed the actual contents of the Ollison Letter from Plaintiffs until December 2005, Defendants did not fraudulently conceal the facts giving rise to Plaintiffs' claims.  The Magistrate Judge found, and this Court agrees, that Plaintiffs did not need a copy of the letter to know that they could commence this lawsuit.  Rather, Plaintiffs needed to have enough information to have reason to believe that they had suffered an injury and that it was caused by the Ollison Letter.  *See, e.g., Gustavson v. United States*, 655 F.2d 1034, 1036 (10th Cir. 1981) (noting that a plaintiff's "[l]ack of knowledge" regarding the specifics of an injury will not toll the statute of limitations).  Plaintiff Bryan had that information when Defendant New told him about the Ollison Letter in April 2002.  Thus, even if Defendants withheld the Ollison Letter

from Plaintiffs, that failure to disclose did not prevent Plaintiffs from filing this lawsuit in a timely fashion.[2]

Moreover, Plaintiff Bryan's failure to exhaust his administrative remedies does not toll the statute of limitations. Plaintiffs correctly contend that they could not have filed the Constitutional claims until after Plaintiff Bryan exhausted his administrative remedies. *See* 42 U.S.C. § 1997e(a) (requiring administrative exhaustion under the Prison Litigation Reform Act). However, Plaintiffs are incorrect in concluding that pursuit of administrative remedies should toll the statute of limitations.

The Court located no published decisions that squarely address this question of law. However, in a recent unpublished decision, the Tenth Circuit Court of Appeals concluded that time spent pursuing exhaustion of administrative remedies in a prisoner civil rights litigation context did not automatically toll the two-year Colorado statute of limitations. *See Rosales v. Ortiz*, 2009 WL 1154875, *3 (10th Cir. April 30, 2009). The plaintiff in *Rosales* sought to toll the statute of limitations in his federal civil rights action on the grounds that the two-year statute of limitations should only run after he completed his administrative remedies, but the Tenth Circuit Court of Appeals disagreed. *Id.* Under the circumstances of that case, the court found that the plaintiff's own lack of diligence in filing his lawsuit after the conclusion of his administrative remedies process did not warrant application of equitable tolling under Colorado law.

---

[2]   Even if the Court accepts Plaintiffs' argument that the statute of limitations should be tolled until Plaintiff Bryan received a copy of the letter in 2005, any claims based on the letter would still fall outside of the two-year statute because Plaintiff Bryan received the Ollison Letter in December 2005, but did not file this case until April 2008.

11

*Id.* Although *Rosales* is distinguishable from this case,[3] the Court of Appeals' reasoning is instructive.

In this case, Plaintiffs knew or should have known of their cause of action in April 2002, but Plaintiff Bryan did not commence an administrative grievance action until well after that date. Indeed, Plaintiffs admit that Plaintiff Bryan did not exhaust his administrative remedies until May 2006 – four years after he knew or should have known of the facts giving rise to his claims. Thus, Plaintiff Bryan, like the plaintiff in *Rosales*, did not pursue his administrative remedies in a timely fashion and this lack of diligence will not support tolling of the statute of limitations under Colorado law. *See, e.g., Smith v. Executive Custom Homes, Inc.*, 209 P.3d 1175, 1180 (Colo. Ct. App. 2009) (noting that plaintiffs must act with diligence upon discovery of a cause of action or risk forfeiture of their lawsuit by expiration of the statute of limitations). Moreover, like the plaintiff in *Rosales,* Plaintiffs do not explain their failure to timely pursue their remedies in either the administrative forum or this Court until after years after their claim accrued.[4]

Plaintiffs also contend that the Magistrate Judge should have tolled the two-year statute on the Privacy Act claim because of the potential for confusion as a result of a

---

[3] Unlike this case, the statute of limitations in *Rosales* had not expired at the time the plaintiff concluded his administrative grievance process. *Id.*

[4] Plaintiffs' allegations that the prison administrative process would not have provided them any meaningful relief do not justify tolling the statute of limitations, either. Indeed, if the administrative remedies were as futile as Plaintiffs claim they were, why didn't Plaintiffs immediately file suit in this Court (or the appropriate court in Texas, where Plaintiff Bryan was housed at the time) before commencing an administrative grievance with BOP authorities?

conflict between the administrative exhaustion requirement in the Prison Litigation Reform Act ("PLRA") and the Privacy Act.  However, the Court disagrees with Plaintiffs and finds *Harrell* instructive.

In *Harrell*, the plaintiff alleged that errors in his presentence investigation report caused errors in the administration of his prison sentence.  285 F.3d at 1293.  The district court dismissed his claim as time-barred and the Tenth Circuit Court of Appeals affirmed.  *Id.*  The Court of Appeals found that the plaintiff first became aware of the errors in the presentence report in 1992, but the plaintiff did not bring his claim until 1999.  *Id.*  That court found that the two-year statute of limitations was not extended by subsequent governmental actions based on the presentence report or by the plaintiff's receipt of documents corroborating the plaintiff's assertions.  *Id.* at 1294.

This case contains almost identical factual circumstances to *Harrell*.  Plaintiff Bryan first learned of the Ollison Letter and the letter's potential effect on the administration of his prison sentence in 2002, but Plaintiffs did not bring their lawsuit until 2008.  In other words, Plaintiff had roughly six years to resolve the alleged conflict between the administrative exhaustion requirements under the PLRA and the Privacy Act.  Under these circumstances, the Court agrees with the Magistrate Judge that Plaintiff Bryan's own failure to diligently pursue his administrative remedies cannot toll the applicable statutes of limitations.

3.     The Continuing Violation Doctrine Does Not Apply

Plaintiffs also object to the Magistrate Judge's decision to not apply the continuing violation doctrine to extend the statutes of limitations.

In Title VII cases, the continuing violation doctrine permits a plaintiff to bootstrap discriminatory incidents that fall outside of the applicable statute of limitations to incidents falling within the statute of limitations if the older incidents are sufficiently related to the timely incidents and constitute a continuing pattern of conduct. *See, e.g., Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994).

The Tenth Circuit Court of Appeals has not specifically applied the continuing violation doctrine in either a § 1983 or *Bivens* claim.  However, the Magistrate Judge found that even if the doctrine had been so extended, claims one and two should still be dismissed as untimely because the doctrine would not apply in this case.  The Magistrate Judge found that each of Plaintiffs' alleged injuries stemmed from Defendants' imposition of the PSF and, therefore, the Magistrate Judge concluded that the effects allegedly wrought by the PSF, *e.g.,* Defendant BOP's refusal to transfer Plaintiff Bryan and Defendant Wiley's imposition of telephone restrictions, should be distinguished from the precipitating events.  Thus, the Magistrate Judge recommended that, even if it could be applied in this case, the continuing violation doctrine did not save Plaintiffs' claims from the statute of limitations.

Plaintiffs object and claim that they have alleged a continual pattern of related behavior by Defendants that violates Plaintiffs' rights under the Constitution and the

14

Privacy Act.  However, Plaintiffs do not address the threshold question of whether the continuing violation doctrine should even be extended to their *Bivens* claims.  Given this omission, the Court finds the reasoning in *Harrell* (a Privacy Act case discussing a similar argument to extend the statute of limitations) applies with equal force in this case – if Plaintiffs were allowed to state a timely claim based on each new use of the Ollison Letter, the statutes of limitations would never run.

Moreover, the Court agrees with the Magistrate Judge that each of Plaintiffs' alleged injuries stem from a single wrongful act that occurred in 2002, use of the Ollison Letter.  The Court agrees with the Magistrate Judge that subsequent events described by Plaintiff, *e.g.*, a meeting among certain Defendants in 2005 and Defendant Wiley's imposition of the telephone restrictions, were not new illegal acts that would allow Plaintiffs to rope the Ollison Letter into the applicable limitations period.  Rather, the subsequent acts merely sustained the injury caused by the original act.  Thus, regardless of whether the Tenth Circuit has extended the continuing violation doctrine to *Bivens* claims, the doctrine would not apply under the facts of this case.

Plaintiffs having failed to present any argument on the critical issue of whether this Court should extend the continuing violations doctrine to the *Bivens* claims in this case and running headlong into contrary Tenth Circuit precedent, the Court concludes that Plaintiffs' objection on this issue must be overruled.

4.      The Criminal Statute Of Limitations Does Not Apply

In a creative attempt to extend the statute of limitations period, Plaintiffs argue that the Magistrate Judge erred by not applying a five-year statute of limitations to their claims.  Plaintiffs argue that the Amended Complaint establishes that Defendants violated 18 U.S.C. §§ 1001(a) (false statements) and 371 (conspiracy).  Thus, they contend that the five-year statute of limitations for a criminal conspiracy should apply. *See* 18 U.S.C. § 3282.

However, as Plaintiffs acknowledge, this is a civil lawsuit for damages, not a criminal matter.  Thus, the two-year statutes of limitations for *Bivens* and Privacy Act claims will apply in this case.  *See Industrial Constructors*, 15 F.3d at 968 ("a *Bivens* action, like an action brought pursuant to § 1983, is subject to the statute of limitations of the general personal injury statute in the state where the action arose").  Moreover, Plaintiffs have cited no authority for their argument that the statutes of limitations in a civil case involving allegations of criminal conduct "are extended differently than in a pure civil conspiracy case," and the Court sees no logical reason to do so.  By its own terms, 18 U.S.C. § 3282 applies only to criminal prosecutions, not to civil rights lawsuits like this one.

Plaintiffs' objections regarding the statute of limitations analysis raise interesting and creative arguments, but, ultimately, the Court agrees with the Magistrate Judge that both the *Bivens* claims and the Privacy Act claim are time-barred.[5]

## II.    QUALIFIED IMMUNITY

The Magistrate Judge also recommended that, to the extent they were not time-barred, Plaintiffs' *Bivens* claims be dismissed on the basis of qualified immunity.

A.    Applicable Law – Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is more than a defense to liability, it is immunity from suit, so courts should rule on the issue as early as possible in the litigation to avoid mistakenly permitting a defendant to suffer the burdens of discovery and/or trial.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (qualified immunity is "immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial"); *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001) (noting that courts should resolve the "purely legal question raised by a

---

[5]    The Court concludes that the statutes of limitations dooms Plaintiffs' claims because Plaintiffs have not presented any timely actions that would support liability.  However, because the Magistrate Judge also addressed additional grounds for dismissal and because Plaintiffs have filed objections to the Magistrate Judge's additional conclusions, the Court will likewise address the Magistrate Judge's additional findings and Plaintiff's corresponding objections.

qualified immunity defense at the earliest possible stage in litigation") (internal quotations and citations omitted).

When a defendant raises qualified immunity, the burden of proof shifts to the plaintiff to make a twofold showing to overcome immunity.  *See Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000) (citing *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000)).  The plaintiff must show that:  (1) when the facts are viewed in a light favorable to the plaintiff, the defendant's actions violated a constitutional or statutory right; and (2) the constitutional or statutory right was clearly established at the time of the conduct at issue.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) *overruled in part on other grounds by Pearson*, 129 S. Ct. 808; *see also Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (describing plaintiff's two-part burden to overcome qualified immunity); *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) ("First, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  If so, we must subsequently ask whether the right was clearly established.") (internal citations, quotations, and alterations omitted); *Scull*, 236 F.3d at 595 (same).

B.     Plaintiffs' Objections Regarding Qualified Immunity

Plaintiffs contend that the Magistrate Judge erred in concluding that Plaintiffs had failed to establish a violation of Plaintiff Bryan's equal protection rights and his family's First Amendment rights.  Thus, Plaintiffs contend that the Magistrate Judge erred in applying the doctrine of qualified immunity to any non-time-barred constitutional claims.

18

However, the Court finds that Plaintiffs construe their constitutional rights too liberally under the circumstances of this case.

First, the Court agrees with the Magistrate Judge that Plaintiff Bryan's equal protection claim fails because Plaintiffs have failed to adequately identify a similarly situated inmate for whom Defendants have waived a PSF and/or transferred to lower security facility. *See Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) (noting that equal protection plaintiff must identify a similarly situated individual to state a claim); *Keck v. Zenon*, 240 Fed. Appx. 815, 819-20 (10th Cir. 2007) (same). Plaintiffs object to this finding and argues that dozens of fellow inmates who have been convicted of fraud do not have the same PSF that Defendants imposed on Plaintiff Bryan. However, Plaintiffs must allege more than a similar conviction record to establish that Plaintiff Bryan is similarly situated to his fellow inmates. *See Templeman*, 16 F.3d at 371 (rejecting conclusory allegations as a basis for equal protection claim).

Plaintiffs also argue that Defendants have not named any other inmates who have had their rights affected by imposition of a PSF on the basis of false information. However, when faced with Defendants' assertion of qualified immunity, Plaintiffs, not Defendants, have the burden of establishing that Plaintiff Bryan suffered a violation of his equal protection rights. Thus, Plaintiffs must come forward with evidence to establish a violation of Plaintiffs' equal protection rights. The Court agrees with the Magistrate Judge that Plaintiffs have failed to do so in this case.

Plaintiffs also argue that Defendants' qualified immunity is overcome in this case because Defendants New and Ollison knew or should have known that "a federal employee cannot discriminate against anyone."   However, Plaintiffs incorrectly interpret the scope of equal protection under the Constitution.   In contrast to Plaintiffs' objection, the Constitution does not prohibit all discrimination by the Government in all contexts. Instead, under the circumstances described in Plaintiffs' Amended Complaint, the Constitution merely prohibits discrimination when the Government has no rational basis for the allegedly discriminatory actions it took.   *See Turner v. Safley*, 482 U.S. 78, 89 (1987) (establishing reasonableness standard for prison regulations).   This is a standard that Plaintiffs have failed to meet in this case.

Moreover, Plaintiffs contend that the Magistrate Judge erred because Defendants New and Ollison, as college-educated employees of the U.S. Government, should have known that use of a falsified record, *e.g.*, the Ollison Letter, would violate Plaintiff Bryan's constitutional rights.   However, this argument puts the cart before the horse.   The Magistrate Judge did not need to reach the knew or should have known prong of the qualified immunity analysis (a.k.a., the clearly established prong) because the Magistrate Judge correctly concluded that Plaintiffs had not met the first prong of the analysis because they had failed to establish a constitutional or statutory violation.   A court performing a qualified immunity analysis may address either prong of the analysis first.   *See generally Pearson*, 129 S. Ct. 808 (overruling in part *Saucier v. Katz*, 533 U.S. 194 (2001)).   Given that the Magistrate Judge correctly concluded that Plaintiffs

had not met their burden on one prong of the analysis, the Magistrate Judge need not have addressed the second prong. *Id.*

Regarding claim two, the Court agrees with the Magistrate Judge that Plaintiffs have failed to establish a First Amendment violation because the restrictions placed on Plaintiffs by BOP Defendants are reasonably related to the penological purposes that Defendant BOP is charged with carrying out. *See, e.g., Beerhide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002) (noting that courts should "balance the guarantees of the Constitution with the legitimate concerns of prison administrators"). Incarceration is intended to punish inmates by, in part, requiring them to surrender certain privileges enjoyed by the general population. *See Wirsching v. Colorado*, 360 F.3d 1191, 1198 (10th Cir. 2004). One of the privileges that inmates necessarily surrender is the ability to freely associate with their families. With these principles in mind, the Court concludes that the telephone, mail, and visitation restrictions identified in the Amended Complaint are a reasonable component of Plaintiff Bryan's punishment. *Cf. id.* (discussing prison policy that completely precluded prisoner's contact with his members of his family).

## III.   MOTION TO AMEND

The Court has also reviewed the Magistrate Judge's Recommendation regarding Plaintiffs' Motion to Add Parties, which the Magistrate Judge construed as a motion for

permissive joinder and motion to amend.  (Doc. # 84.)  Upon a review for clear error,[6] the Court concludes that the Magistrate Judge correctly determined that the Motion to Add Parties should be denied.

## CONCLUSION

In sum, the Court agrees with the Magistrate Judge that Plaintiffs' claims are time-barred by the applicable two-year statutes of limitations.  To the extent that Plaintiffs' constitutional claims are not time-barred, the Court also agrees with the Magistrate Judge that such claims are precluded by the doctrine of qualified immunity.

Accordingly, the Magistrate Judge's Recommendation on Motion to Dismiss (Doc. # 83), Recommendation on Defendant Ollison's Motion to Dismiss (Doc. #91), and Recommendation on Plaintiff's Motion for Joinder and to Amend (Doc. # 84) are AFFIRMED AND ADOPTED;

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Doc. # 55) and Defendant Ollison's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. # 91) are GRANTED and all claims against all properly-served Defendants are DISMISSED WITH PREJUDICE;

IT IS FURTHER ORDERED that Plaintiffs' Motion to Add Parties (Doc. # 70) is DENIED; and

---

[6]  Plaintiffs did not object to the Magistrate Judge's recommendations on the Motion to Add Parties.

IT IS FURTHER ORDERED that because the time limit under the Federal Rules

of Civil Procedure for serving Defendant Justice having passed, the claims against

Defendant Justice are DISMISSED WITHOUT PREJUDICE.

DATED:  September   30  , 2009

BY THE COURT:

_____

CHRISTINE M. ARGUELLO
United States District Judge

23